[No. 36131. *En Banc.* January 11, 1962.]

THE STATE OF WASHINGTON, *on the Relation of Cosmopolis Consolidated School District No. 99, Grays Harbor County, Appellant,* v. LOUIS BRUNO, *as Superintendent of Public Instruction, et al., Respondents.*\*

\*Reported in 367 P. (2d) 995.

*Manley & Kirkwood*, for appellant.

*The Attorney General, Robert J. Doran, Assistant,* and *James J. Solan*, for respondents.

OTT, J.—Cosmopolis Consolidated School District No. 99 of Grays Harbor County made application in the Superior Court for Thurston County for a writ of certiorari and joined as defendants Louis Bruno, Superintendent of Public Instruction, the members of the State Board of Education, the members of the Grays Harbor County Committee on School District Reorganization, and Blanche Pennick, County Superintendent of Schools for Grays Harbor County.

The petition alleged that Cosmopolis was a nonhigh school district; that 60 of its students attended the Aberdeen high school; that Aberdeen district's high school enroll-

ment was 976; that the proposed plan submitted by the county committee for a high school building program in the Aberdeen district provided that Cosmopolis' participating contribution would be $210,000, and that of Aberdeen $1,079,544; that the state board, acting through Louis Bruno, its president, rejected the plan and coerced the county committee to submit an increased participation by Cosmopolis of $329,865, and a reduction for the Aberdeen district to $959,679, under threat that any other participation plan would be rejected by the state board and the Aberdeen high school building program cancelled; that the action of the defendants in fixing the amount of Cosmopolis' participation was arbitrary, capricious, inequitable, and based upon an unlawful formula of participation, and that a review of the conduct of the defendant officials was sought by certiorari for the reason that the Cosmopolis district had no other plain or adequate remedy at law.

The defendants' answer denied arbitrary, capricious or inequitable action and, as an affirmative defense, alleged that defendants acted legally and in compliance with RCW 28.56, and prayed that the petition be quashed and the cause of action dismissed.

June 28, 1961, defendants filed a motion to dismiss the petition, contending that the superior court lacked jurisdiction to hear the cause for the reason that

"The State Board of Education when determining what in its judgment constitutes an adequate and satisfactory plan for nonhigh school districts to aid a high school district in construction of facilities (RCW 28.56.040) is not exercising a judicial function and, therefore, its action in approving the proposed plan submitted by defendant Grays Harbor County Committee on School District Reorganization which provides for participation of plaintiff is not subject to review in this court under RCW 7.16.040."

From a judgment of dismissal, based upon lack of jurisdiction, the Cosmopolis school district has appealed.

This appeal presents a single issue: Can alleged arbitrary, capricious or illegal action on the part of public officials be reviewed by the courts?

Art. 4, § 1, of the state constitution, provides that the

judicial power shall be vested in the courts of this state. Art. 4, § 6, provides in part: " . . . Said courts [superior] and their judges shall have power to issue writs of . . . review, certiorari, . . . on petition . . . ."

The trial court held that it did not have jurisdiction to review the alleged conduct of these public officials, for the reason that the legislature did not specifically provide for such a review in RCW 28.56. Statutory authority for review is not necessary. The courts' constitutional power of review cannot be abridged by legislative enactment. The allegations of the petition stated a cause of action. The review of such conduct by public officials is delegated to the courts by the constitution.

The respondents contend that the function to be reviewed is not judicial, but administrative; hence, not subject to review by the courts. We do not agree. The petition alleged that the county committee was not privileged to exercise its discretion in determining a fair and equitable participation, as provided by RCW 28.56, but was coerced by the State Board of Education into adopting a participation suitable to it, under threat of cancellation of the contemplated building program.

We are not here solely concerned with whether the function performed was administrative or judicial, but, also, with whether the function was legally performed. The legality of the act of the officials is subject to review, as well as their alleged arbitrary and capricious conduct.

The function here performed determines the obligation a municipal corporation must assume to meet certain educational requirements. Such function, because it involves the amount of money or property one must pay or contribute to support government, has historically been subject to review by the courts for either abuse of discretion or arbitrary and capricious action on the part of the one imposing the obligation. *In re Harmon*, 52 Wn. (2d) 118, 323 P. (2d) 653 (1958); *Ozette R. Co. v. Grays Harbor Cy.*, 16 Wn. (2d) 459, 133 P. (2d) 983 (1943); *Northern Pac. R. Co. v. Pierce Cy.*, 55 Wash. 108, 104 Pac. 178 (1909); *Lewis v. Bishop*, 19 Wash. 312, 53 Pac. 165 (1898). When

such an issue is presented, the court will not substitute its judgment for that of the administrative agency, and will set the determination aside only if the evidence establishes that it was the result of unlawful, arbitrary or capricious action. In *In re Townsend*, 54 Wn. (2d) 532, 533, 341 P. (2d) 877 (1959), we said:

"It is well settled that, in cases such as this, the administrative determination of the facts is conclusive, unless it be wholly without evidential support, or wholly dependent on a question of law, or clearly arbitrary or capricious. [Citing cases.]"

The court's review of such conduct by school authorities is not without precedent in this state. In *Goodnoe Hills School Dist. No. 24 v. Forry*, 52 Wn. (2d) 868, 329 P. (2d) 1083 (1958), the superior court did review the alleged arbitrary and capricious action of a county committee in annexing Goodnoe Hills and Cliffs nonhigh school districts to a high school district. In that case, we said [p. 878]:

" . . . We find nothing arbitrary and capricious in an annexation which results in the taxpayers of Goodnoe Hills and Cliffs bearing an equitable portion of the capital expense necessary to provide suitable facilities for the high school education of their children. . . .

"Nor do we find anything in the record which supports appellants' assertion that the state board of education unduly influenced the county committee to act under an erroneous interpretation of the law."

Respondents cite *Okanogan Cy. School Dist. No. 400 v. Andrews*, 58 Wn. (2d) 371, 363 P. (2d) 129 (1961), in support of their contention that the courts lack jurisdiction to review such conduct. The cited case involved the standards by which a high school is granted an accredited rating. The directors of the unaccredited school contended that the standards had been met. There was no allegation or proof of arbitrary or capricious conduct on the part of the administrative agency. The cited case is not authority on the issue raised by the pleadings in the instant case.

▮ Finally, respondents contend that, since the voters in the school districts can accept or reject the proposed

participation, the discretion exercised by the board in fixing the amounts is not final; hence, not subject to review.

We find no merit in respondents' contention. The petition alleged that the proposed participation which would appear on the ballot was illegally determined; that the state board had coerced the county committee by threatening to cancel the building program, and that the participation was thus determined contrary to law. RCW 28.56.020. The voters of the school districts involved are entitled to have upon the ballot a legally determined participation.

We conclude that the right of Cosmopolis Consolidated School District No. 99 to have the courts review the alleged conduct of the respondents is guaranteed by Art. 4, §§ 1, 6, of the state constitution.

The judgment is reversed, and the cause remanded with instructions to reinstate the action.

MALLERY, HILL, WEAVER, FOSTER, and HUNTER, JJ., concur.

ROSELLINI, J. (dissenting)—In accordance with the provision of RCW 28.56.040, the State Board of Education approved a plan submitted by the defendant Grays Harbor County Committee on School District Reorganization, which provided for the participation of the relator in construction of high school facilities. The question to be determined by this court: In so doing, was the state board exercising a judicial function which was subject to review in the superior court?

RCW 7.16.040 provides:

"A writ of review shall be granted by any court, except a police or justice court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law."

Since the statute provides for judicial review only in cases where the act of an inferior tribunal was done in

the exercise of a judicial function, it is necessary in each case to examine the nature of the action which is sought to be reviewed. *Floyd v. Department of Labor & Industries*, 44 Wn. (2d) 560, 269 P. (2d) 563.

We are here concerned with actions of the board of education and of the Grays Harbor County Committee on School District Reorganization.

Under Art. 9, § 1, of the Washington constitution, it is the paramount duty of the state to make ample provision for the education of all children residing within its borders. In compliance with this provision and the mandate of Art. 9, § 2, the legislature has provided for a general and uniform system of public schools. In order to insure, in so far as possible, (1) equal educational opportunities for all high school students whether they live in a high, or nonhigh, school district, and (2) equal distribution of the tax burden which must be borne by the citizens of this state for adequate high school facilities, the legislature enacted Laws of 1953, chapter 229, p. 553.

This act, as amended, is codified in RCW chapter 28.56. The provisions, in essence, provide for "participation by nonhigh school districts in providing capital funds for financing the cost of high school facilities." This court, in effect, concluded in *Goodnoe Hills School Dist. v. Forry*, 52 Wn. (2d) 868, 329 P. (2d) 1083, that the act was designed for the purpose of requiring taxpayers of nonhigh school districts to bear

" . . . an equitable portion of the capital expense necessary to provide suitable facilities for the high school education of their children. . . ."

To carry out this purpose, the legislature prescribed the following procedure:

Upon receipt of a written request from a high school district, the local county committee is required to prepare a plan for participation by nonhigh school districts in providing capital funds to pay the cost of school facilities to be provided for the education of students residing in the school districts. RCW 28.56.010. The factors to be considered by

the county committee in preparing the plan are set forth in RCW 28.56.020.

Thereafter, the county committee is required to give notice to the general public of a public hearing or meeting on the proposed plan. RCW 28.56.030. Subsequently, the county committee shall determine the nonhigh school districts to be included in the plan and the amount of funds to be provided by each district included therein. This plan is then submitted to the state board. RCW 28.56.040, which further provides:

" . . . The state board shall review such plan, shall approve any plan which in its judgment makes adequate and satisfactory provision for participation by the nonhigh school districts in providing capital funds to be used for the purpose above stated, and shall notify the county committee of such action. Upon receipt by the county committee of such notification, the county superintendent shall notify the board of directors of each school district included in the plan, supplying each board with complete details of the plan and shall state the total amount of funds to be provided and the amount to be provided by each district."[1]

No hearing is required before the state board on proposals submitted. In the instant case, the state board at its meeting on June 9, 1961, as a part of its regular administrative business, determined (without conducting any type of hearing) that the plan submitted by the Grays Harbor County committee made, *in its judgment*, "adequate and satisfactory" provision for participation by the appellant nonhigh school district in providing capital funds for construction of facilities in the Aberdeen school district where the appellant's high school students are educated.

If respondents are allowed to proceed, as provided by statute, appellant, within sixty days after receipt of notice of approval from the county superintendent, will be required to submit to the voters in the district a proposal for providing, through the issuance of bonds and/or the authorization of an excess tax levy, the amount of funds the district is required to provide under the plan. RCW 28.56.050.

---

[1] The action which has been restrained by this litigation is the notification of appellant of the approval of the plan.

Therefore, the final decision as to whether any funds should, or will, be provided is left to the voters in the appellant district.

The procedure that may be followed in the event the district twice refuses to vote the necessary funds is set forth in RCW 28.56.060. However, the possible annexation authorized by statute of the nonhigh district to the high school district is left within the discretion of the county committee; and before there could be any annexation, the county committee would have to hold public hearings and submit such proposal to the state board for approval. This procedure was followed in *Goodnoe Hills School Dist. v. Forry, supra.*

There is no provision in RCW chapter 28.56 for judicial review of the state board's actions in approving or disapproving a plan submitted to it by a local county committee; and for this reason, appellant sought judicial review under RCW 7.16.040.

In this proceeding, the relator seeks to have reviewed a decision of the board of education approving a plan submitted by the county committee—the contention being that the approval was arbitrary because the county committee, in preparing its plan, did not take into account certain factors which the relator thinks had a bearing on the preparation of an equitable plan.

It is well at this point to again state the duty imposed upon the board of education in this regard:

"  .  .  .  The state board shall review such plan, shall approve any plan which in its judgment makes adequate and satisfactory provision for participation by the nonhigh school districts in providing capital funds to be used for the purpose above stated, and shall notify the county committee of such action.  .  .  .  [1959 c 262 § 5  .  .  .]" RCW 28.56.040.

It will be seen that what the statute requires is an exercise of discretion on the part of the board, and that its action does not finally determine the rights of any party, but is rather a step in the process of preparing a plan to be submitted to the voters for their approval.

As we said in *Floyd v. Department of Labor & Industries, supra,* when courts are confronted with the problem of determining whether an administrative agency performs legislative or judicial functions, they rely on certain tests to aid in classifying the agency's functions. One such test is whether the court could have been charged, in the first instance, with the responsibility of making the decision the administrative body must make. It is manifest that the action of the state board in this case was not one with which the court could be charged by the legislature. The decision was not one requiring knowledge of the law, but rather knowledge of facts and the exercise of judgment based upon that knowledge and experience in a specialized field. The decision was an administrative decision, not judicial.

Another test is whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body. Again, no instance has been brought to our attention where a court has ever made a decision of the kind involved in this action. Were the courts to be charged with such a duty by the legislature, I have no doubt that the act would be held unconstitutional.

In the recent case of *Okanogan Cy. School Dist. No. 400 v. Andrews,* 58 Wn. (2d) 371, 363 P. (2d) 129, we quoted with approval the following statement appearing in 3 Davis, Administrative Law Treatise, 390, 395, § 24.02:

"Perhaps as good a criterion as any for determining what is judicial is merely to compare the action in question with the ordinary business of courts: that which resembles what courts customarily do is judicial, and that which has no such resemblance is nonjudicial."

In that case this court was asked to review a determination by the Board of Education rejecting an application for accreditation of a high school. Holding that the action of the board was not subject to judicial review (no statutory provision for such review having been made), we said:

"In our opinion the determination of the existence or nonexistence of these qualifications [for accreditation] is

definitely not a matter which is, or ever has been, within the province of the courts. Such an issue does not resemble what courts customarily deal with. In exercising its discretion to grant or deny accreditation to a high school having less than thirty-six daily attendants, the board was not exercising a judicial or even a quasi-judicial function. The nature of the act performed by the board is distinctly legislative or administrative as distinguished from judicial. . . ."

In that case, the action of the board was a final determination of the right of the high school to be accredited. Here, the action of the board did not determine any right, but merely approved a plan to be submitted to the voters, who would decide for themselves whether they would be bound by it. The action of the board was even more clearly non-judicial than its action in the *Okanogan School District* case, *supra.*

The majority attempt to distinguish this case, saying that it is not authority on the issue of arbitrary and capricious conduct. But if the petitioner in that case did not contend that the conduct of the state superintendent was arbitrary and capricious, I am at a loss to discern what its contention was. The petitioner said that it had met the minimum standards set up by the appellant board; yet it had been denied accreditation. This is nothing more nor less than an allegation that the board had acted arbitrarily in denying the desired accreditation. The court held that it had no jurisdiction to review the act. I do not see that the case can be distinguished.

The majority state that the function performed by the state board in this case (in approving the plan submitted by the county committee) determines the obligation a municipal corporation must assume to meet certain educational requirements, that it involves the amount of money or property "one must pay or contribute to support government," and has historically been subject to review by the courts for either abuse of discretion or arbitrary and capricious action on the part of the one imposing the obligation. They cite *In re Harmon,* 52 Wn. (2d) 118, 323 P. (2d) 653; *Ozette R. Co. v. Grays Harbor Cy.,* 16 Wn. (2d) 459, 133

P. (2d) 983; *Northern Pac. R. Co. v. Pierce Cy.*, 55 Wash. 108, 104 Pac. 178, and *Lewis v. Bishop*, 19 Wash. 312, 53 Pac. 165.

Not one of these cases is in point or in any way supports the proposition stated by the majority. In each of them there was statutory provision for review by the courts. *In re Harmon, supra*, dealt with a review of an order revoking the dentistry licenses of the petitioners. The right of review was expressly granted under the provisions of Laws of 1935, chapter 112, § 9, p. 296 (now RCW 18.32.270). With one exception, all of the other cases cited were suits by taxpayers to recover taxes paid on their property which they alleged was overvalued by the assessor. In the first case, *Lewis v. Bishop, supra*, the court held that the board of county commissioners, when sitting as a board of equalization, exercised *judicial functions* in passing upon the valuations of property returned by the assessor; that there was no statutory right of appeal, but that the action was subject to review by the courts under Laws of 1895, chapter 65, § 4, p. 115, because the function which it performed in that regard was judicial. That the function exercised by such boards is judicial is well settled. 3 Cooley, Taxation (4th ed.), 2400, § 1199. This is so because the action of the board finally determines an obligation of the taxpayer; that is, the valuation placed upon his property will determine the proportion of taxes that he will be required to pay.

*Northern Pac. R. Co. v. Pierce Cy., supra*, was another suit to recover taxes on property which it was claimed had been overvalued. The court in that case cited *Templeton v. Pierce Cy.*, 25 Wash. 377, 65 Pac. 553, wherein this court said of its power in reviewing assessments:

" . . . The mere overvaluation of property by the assessor, if he acts in good faith, and in the honest exercise of his judgment, furnishes no ground for relief in equity. For excessive assessments, unless fraud is established by the proof, or may be presumed from the circumstances, equity furnishes no relief, and the remedy must be such as the statute has given. Cooley, Taxation, 775; 2 Desty, Taxation, 655. This is the general rule, and we think the decisions of this court are in harmony with the same."

In 1931 the legislature enacted chapter 62 (now contained, as amended, in RCW chapter 84.68) which provided for the institution of actions to recover taxes that were excessive or unlawful. *Ozette R. Co. v. Grays Harbor Cy.*, cited by the majority, was brought under the provisions of this statute. Again the court reiterated that the mere fact that assessing officers have proceeded upon a fundamentally wrong basis or that an assessment is excessive is not of itself sufficient to justify the intervention of the courts at the instance of a taxpayer; but before relief will be granted, it must clearly appear that the assessment is so palpably excessive as to amount to constructive fraud or to violate some constitutional principle.

The next case cited by the majority is *In re Townsend*, 54 Wn. (2d) 532, 341 P. (2d) 877. This case involved a claim for unemployment compensation which had been denied by the commissioner of the employment security department. RCW 50.32.120 provides for appeals to the courts in such cases. This case likewise does not support the holding of the majority opinion.

It is significant that all of these cases were brought by *individuals* claiming that they had been unlawfully deprived of some property or other right. Here, we have a school district that does not pretend it has suffered any loss as a result of the board's action. The majority assume, without discussion, that it is a party "beneficially interested" (see RCW 7.16.050) and has standing to bring this action.

Finally, tacitly admitting that the previously cited cases do not support the proposition that the courts have power to review nonjudicial acts of administrative bodies, where there is no statutory provision for review, the majority state that their conclusion in this case is not without precedent and give as the precedent *Goodnoe Hills School Dist. No. 24 v. Forry, supra*. As they say, the superior court did review the alleged arbitrary and capricious action of a county committee in annexing Goodnoe Hills and Cliffs nonhigh school districts to a high school district. That case was principally concerned, however, with a question of

the validity of the statute under which this annexation was accomplished and the authority of the county committee under that statute. Having determined that the appellants' contentions in these respects were without merit, the court in a final paragraph held that a contention that the committee acted arbitrarily and capriciously was not sustained by the record.

Insofar as the opinion reveals, the jurisdiction of the courts to try this issue was not questioned. There was no discussion of the type of function which the committee exercised in making its determination. The issues presented in this case were neither mentioned nor decided. It may be said, however, that the act of the committee in annexing the nonhigh school district has much more of the color of a final act than the act of the state board in this case, which merely placed approval on a plan to be submitted to the voters.

To my mind, the decision of the majority in this case is without precedent. If they are correct and the court has inherent power to review what it terms arbitrary and capricious acts, whether or not they are judicial acts, there is nothing to prevent it from reviewing and declaring void executive acts of the Governor or other state officers whenever they meet with its disapproval.

It is difficult for me to conceive just what duties the court intends to impose upon itself in deciding whether the state board acted arbitrarily in this instance. It would seem that in order to reach a just and intelligent decision, it would have to study all of the evidence which was before the board when it made its determination, make an independent study of the principles which ordinarily guide an administrative body of this kind and which have proved most effective, and interview all of the members of the board, the county committee, and the school district, in order to learn what their experience had taught them about the problems and whether they acted in good faith.

It is significant that there is in this case no allegation that the state superintendent or members of the board acted fraudulently or in bad faith. It is merely alleged

that the action of the board in approving the county committee's proposal was arbitrary, capricious, and inequitable because it was based solely on the relative assessed valuations and the ability of the plaintiff to issue bonds, to the exclusion of any and all other considerations.

Examining the pleadings and briefs of the appellant, I find mentioned only one factor that the appellant feels the state board should have considered, but failed to take into account; that is, the "number of students from each district." There is in the statute no requirement that this factor be considered by the county committee in preparing its proposed plan of participation. It could come only within the direction of RCW 28.56.020 (5), prescribing that the committee consider

"Any other factors found by the committee to have a bearing on the preparation of an equitable plan. [1959 c 262 § 3 . . . ]"

For its purposes in forestalling the submission of this plan to the voters, the appellant has in effect rewritten this provision to read:

"Any other factors found by the *school district* to have a bearing on the preparation of an equitable plan."

There is nothing to justify this in the law or in the facts. I am convinced that this case was properly dismissed; first and most emphatically because the court lacked jurisdiction, and second, if I am wrong on that, because the petition failed to state a claim for relief.

I would affirm the judgment.

FINLEY, C. J., and DONWORTH, J., concur with ROSELLINI, J.

---

April 26, 1962. Petition for rehearing denied.